**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 5 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

RICHARD LEROY HOLBERT,

     Defendant - Appellant.

No. 00-4068

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 99-CR-593-G)**

---

Barbara Bearnson, Assistant United States Attorney (Paul M. Warner, United States Attorney, with her on the brief), Salt Lake City, Utah, for Plaintiff - Appellee.

Randall C. Allen, Parry, Jensen, Graff & Barnes, LLP, Cedar City, Utah, for Defendant - Appellant.

---

Before **EBEL**, **BALDOCK**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

     Defendant-Appellant Richard Leroy Holbert pled guilty to the second count of a two-count indictment, charging possession of a firearm following conviction for a misdemeanor crime involving domestic violence in violation of 18 U.S.C. §

922(g)(9). Mr. Holbert was sentenced to 46 months imprisonment and three years supervised release. He now appeals the district court's application of the 1998 Sentencing Guidelines. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm.

**Background**

In June 1999, Mr. Holbert pled guilty in Utah state court to misdemeanor assault involving domestic violence and was sentenced to 90 days imprisonment. The jail time was suspended upon payment of a $250 fine and successful completion of both 18 months probation and a domestic violence counseling program. When Mr. Holbert failed to pay the fine, a warrant issued for his arrest.

On August 12, 1999, while the warrant remained outstanding, Mr. Holbert allegedly entered the home of his estranged wife, locked her in a bedroom, and threatened her with a firearm. Mr. Holbert escaped before police arrived. On September 27, 1999, Mr. Holbert was arrested by an officer acting on the outstanding warrant. During the arrest, the officer discovered a Strum Ruger .357 handgun in Mr. Holbert's possession. A Utah state court revoked Mr. Holbert's probation on September 28, 1999, and ordered Mr. Holbert to serve 90 days in jail, "with credit for time served and two for one."

On October 13, 1999, Mr. Holbert was charged in federal court with two

counts of possession of a firearm following a misdemeanor conviction for domestic violence in violation of 18 U.S.C. § 922(g)(9). Count I related to the August 12 incident involving Holbert's wife and Count II covered the firearm possession at the time of his arrest. Mr. Holbert pled guilty to Count II and waived his appeal rights.[1] In exchange, the government dropped Count I and agreed to recommend an offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Mr. Holbert admitted no guilt in the August 12, 1999 encounter with his wife, but understood that the government would provide evidence of that incident, which could be considered "relevant conduct" at sentencing.

At sentencing, the district court calculated an initial base offense level as prescribed by U.S.S.G. § 2K2.1(a)(6). After finding that Mr. Holbert had possessed a firearm in connection with another felony offense (the August 12 incident), the court added a four-level increase under U.S.S.G. § 2K2.1(b)(5). The court added another two points under U.S.S.G. § 3A1.3, after determining that on August 12, 1999, Mr. Holbert had physically restrained a victim – his wife – "in the course of the offense." Mr. Holbert objected, arguing that his actions more than six weeks prior to the offense of conviction were not "in the course of

---

[1]    Though Mr. Holbert waived his right to appeal, the Government, citing the interests of justice, withdrew its motion to dismiss on that basis.

the [September 27] offense." The district court also added two criminal history points, pursuant to U.S.S.G. § 4A1.1 (b), for the 90-day sentence "two for one" that Mr. Holbert had received for the state conviction. Mr. Holbert again objected, arguing that the "two for one" provision meant he had received a sentence of 45 days, which warranted only one, not two, criminal history points under U.S.S.G. § 4A1.1(c).[2]

After applying the victim restraint enhancement under § 3A1.1 and criminal history points for the 90-day sentence under § 4A1.1(b), the district court sentenced Mr. Holbert to 46 months imprisonment, followed by three years supervised release.

## A.    Application of U.S.S.G. § 3A1.3

Mr. Holbert challenges the district court conclusion that he restrained his wife "in the course of the offense," and the consequent two-level enhancement pursuant to U.S.S.G. § 3A1.3. We review de novo a district court's legal interpretations of the Sentencing Guidelines. United States v. Arevalo, 242 F.3d 925, 927 (10th Cir. 2001).

A two-level enhancement is permitted under § 3A1.3 "[i]f a victim was

---

[2] Defendant also objected to a two-point increase in the base offense level for obstruction of justice under U.S.S.G. § 3C1.1(A), arguing that Defendant's statement to his wife, "I'll see you real soon," did not rise to the          level of obstruction of justice. Defendant abandons this issue on appeal.

physically restrained in the course of the offense." Mr. Holbert does not dispute the court's factual finding that he physically restrained his wife on August 12, but he argues that its occurrence six weeks prior to the offense of conviction was not "in the course of the offense." The district court nevertheless applied the enhancement because it found that there was a "continuation" between the restraint on August 12 and the firearm possession on September 27, "proximity" between the two events, and that the restraint constituted "relevant conduct." III R. 37-38.

This case presents a situation where a Defendant committed an offense in addition to the offense of conviction, but charges for the additional offense have been dropped as part of a negotiated plea. The Defendant's actions during the additional offense are the subject of a specific offense characteristic adjustment, in this case, the victim restraint adjustment of § 3A1.3. Nothing about the Defendant's conduct during the offense of conviction warrants the adjustment.

The first question raised by this scenario is whether all relevant conduct may be considered in the application of the particular adjustment guideline. More specifically, does the application of § 3A1.3 require that the restraint of the victim occur during the offense of conviction, or does restraint of a victim in relation to any relevant conduct suffice?

We interpret the Sentencing Guidelines as though they were a statute or

court rule, with ordinary rules of statutory construction.  United States v. Tagore, 158 F.3d 1124, 1128 (10th Cir. 1998).  Where the language of the Guidelines is clear and unambiguous, it must be followed "except in the most extraordinary situation where [it] leads to an absurd result contrary to clear legislative intent." Id. (quotations omitted).

Mr. Holbert argues that "in the course of the offense," as used in § 3A1.3, does not encompass all relevant conduct.  Rather, he believes that "in the course of the offense" actually means "in the course of the *offense of conviction*."  The Guidelines do not provide a definition of the phrase "in the course of the offense," and the question has not been addressed in Tenth Circuit case law. However, the Ninth and Sixth Circuits both concluded that if the act of restraint can be properly characterized as "relevant conduct" under U.S.S.G. § 1B1.3, then the restraint occurred "in the course of the offense" under § 3A1.3.  See United States v. Johnson, 187 F.3d 1129, 1133 (9th Cir. 1999); United States v. Cross, 121 F.3d 234, 237 (6th Cir. 1997).

At the outset, we note that the relevant conduct provision of the Guidelines, U.S.S.G. § 1B1.3, commands that "[u]nless otherwise specified, ... adjustments in Chapter Three [including the victim restraint provision in § 3A1.3], *shall* be determined on the basis of" the various categories of relevant conduct.  U.S.S.G. § 1B1.3 (emphasis added).  This section creates a presumption that, unless §

3A1.3 otherwise specifies, we will consider relevant conduct in its application.

§ 3A1.3 does not "otherwise specify" a different meaning, but instead reinforces the instructions in § 1B1.3 to consider relevant conduct. The Guidelines do not define the phrase "in the course of the offense," but they define the term "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, cmt. n.l(l); United States v. Wilkinson, 169 F.3d 1236, 1238 (10th Cir. 1999) (construing "offense" in accordance with § 1B1.1, cmt. n.1(l)). A different meaning of "offense" is not specified in § 3A1.3, so Mr. Holbert is left to argue only that the context in which the word "offense" appears in § 3A1.3 clearly gives that word a different meaning than the definition supplied in § 1B1.1.

Mr. Holbert makes two points about the context of the term "offense" within § 3A1.3. First, he compares § 3A1.3 with the hate crimes and vulnerable victim enhancement governed by § 3A1.1. The commentary to § 3A1.1 states that, for the purpose of the subsection (b), "'vulnerable victim' means a person who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)..." § 3A1.1. cmt. n.2. No similarly explicit instruction to consider relevant conduct is found within the victim restraint enhancement.

Mr. Holbert concludes from this comparison that sentencing judges were not meant to consider all relevant conduct when applying § 3A1.3. He reasons that when the Sentencing Commission wanted consideration of relevant conduct, they added specific instructions to do so as they did for § 3A1.1. Because § 3A1.3 did not include explicit instructions, Holbert argues that "in the course of the offense," should be understood as the equivalent of "in the course of the offense of conviction,"[3] and relevant conduct should not be considered.

However, our examination of § 3A1.1 leads us to an opposite conclusion. A judge applying the hate crime enhancement under § 3A1.1(a) must consider the defendant's motivation as to victims or property that were the object only of the "*offense of conviction*." U.S.S.G. § 3A1.1(a) (emphasis added). Explicitly

_____

[3] The Sentencing Guidelines do not specifically define "offense of conviction," but indicate that the phrase encompasses only facts immediately related to the specific offense for which the defendant was convicted, in this case, the September 27 firearm possession charge. Most notably, U.S.S.G. § 1B1.1, cmt, n.1(l), states that "'offense means offense of conviction and all relevant conduct...," implying that "offense of conviction" is but a subpart of an "offense." Second, § 1B1.2(a) refers to the offense of conviction as "i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted." Finally, § 1B1.3 states that a defendant's "Offense Conduct" is determined by examining "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or wilfully caused by the defendant; and in the case of a jointly undertaken criminal activity...[and includes] all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense or in the course of attempting to avoid detection or responsibility for that offense." Again, this section implies the narrow scope of "offense of conviction."

- 8 -

restricting application of this enhancement to the offense of conviction raises an inference at odds with that proposed by Mr. Holbert; that if the Guidelines authors wanted to limit the application of § 3A1.3 to the offense of conviction, as they did in § 3A1.1(a), then they would have used similarly restrictive language. That they did not suggests their deliberate choice of the term "offense," which, by its definition, includes relevant conduct. When the Sentencing Commission intends to limit the applicability of a victim-related enhancement, it does so explicitly. See also U.S.S.G. § 3A1.2(a) ("If ... the victim was a government officer and the *offense of conviction* was motivated by such status ..." (emphasis added)).

Furthermore, the commentary note cited by Mr. Holbert applies only to subsection (b). By including the definition of "offense," confusion that might result from first using "offense of conviction" in subsection (a) and then using "offense" in subsection (b) is avoided. While the former excludes consideration of all relevant conduct, the commentary assures that the latter includes it. Regardless of the reason for the explicit definition, the commentary is redundant, as it only reiterates the definition of offense found in § 1B1.1.

Mr. Holbert makes a second contextual comparison. He points to Chapter Three, Part B of the Guidelines, which governs enhancements for the "Role in the Offense." The Introductory Commentary to Part B states that "[t]he determination

of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct)..." By comparison, Part A of the same chapter, which governs victim related enhancements including the victim restraint enhancement found in § 3A1.3, does not explicitly mandate consideration of relevant conduct. Mr. Holbert suggests that the presence of explicit text in Part B, and its corresponding absence in Part A, requires an inference that the authors meant to exclude relevant conduct from consideration when applying the sections within Part A.

However, the general instruction for Part B is included because it applies to all sections within Part B. Part A does not contain a blanket instruction to consider relevant conduct simply because it would clash with the directions in § 3A1.1(a) and § 3A1.2(a) *not* to consider relevant conduct. As discussed above, in applying these two sections, sentencing judges are to consider victims and property that are objects of the "offense of conviction." That construction implies that relevant conduct will not be considered for the purpose of applying that subsection, and would be at odds with an introductory comment like that found in Part B.

We find unpersuasive Mr. Holbert's argument that the context of § 3A1.3 suggests a meaning of the term "offense" different from the one provided in § 1B1.1. Furthermore, a line of cases dealing with similar language in § 3A1.1(b)

militates for a broad reading of "offense" in § 3A1.3. § 3A1.1(b) provides for a two-level enhancement if the defendant knew or should have known that a victim of the offense was unusually vulnerable. U.S.S.G. § 3A1.1(b). Prior to a clarifying amendment in 1997, a majority of circuits, including this one, read the phrase "victim of the offense" to include a victim of either the offense of conviction or any relevant conduct.[4] See e.g., United States v. Echevarria, 33 F.3d 175, 180-181 (2d Cir. 1994); United States v. Cruz, 106 F.3d 1134, 1136-37 (3d Cir. 1997); United States v. Blake, 81 F.3d 498, 503-04 (4th Cir. 1996); United States v. Lee, 973 F.2d 832, 833-34 (10th Cir. 1992); United States v. Smith, 930 F.2d 1450, 1455 (10th Cir. 1991); United States v. Yount, 960 F.2d 955, 957-58 (11th Cir. 1992). Only one court restricted the term offense to mean offense of conviction. See United States v. Wright, 12 F.3d 70 (6th Cir. 1993).

Finally, we note an earlier, clarifying amendment to § 3A1.3 which suggests a broader reach than contended for by Mr. Holbert. Prior to November 1, 1989, the section provided that "[i]f a victim *of a crime* was physically restrained in the course of the offense increase by **2** levels." (emphasis added).

---

[4]    In an amendment that took effect November 1, 1997, the Sentencing Commission made explicit the interpretation of the majority of circuit courts, stating in the commentary that "victim" in subsection (b) "includes any person who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 3A1.1, cmt n.2.

Amendment 249 deleted the italicized portion, making it clear that the section applied to victims of offense conduct beyond the offense of conviction or other crime.  See also United States v. Gaytan, 74 F.3d 545, 560 (5th Cir.), cert. denied, 519 U.S. 821 (1996) (§ 3A1.3 enhancement may be applied regardless of whether person restrained was victim of offense of conviction); United States v. Wright, 119 F.3d 390, 392 (6th Cir. 1997) (same); United States v. Kime, 99 F.3d 870, 885-86 (8th Cir. 1996) (same); United States v. Vought, 69 F.3d 1498, 1502 (9th Cir. 1995) (same).

We hold that, for the purpose of applying § 3A1.3, the defendant must have physically restrained a victim in the course of the offense, and that the course of the offense includes any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).

In his opening brief, Mr. Holbert concedes both that he physically restrained his wife on August 12 and that the act is "relevant conduct."  Aplt. Br. at 5.  Mr. Holbert's reply brief attempts to change the tune of the appeal.  There he argues for the first time (and then again at oral argument) that the August 12 incident is not relevant conduct and therefore, regardless of our conclusions above as to the scope of the term "offense," under no circumstance can it be considered when applying § 3A1.3.  The general rule is that appellate courts will not entertain issues raised for the first time on appeal in an Appellant's reply.

Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1277-78 (10th Cir. 1994). This rule is especially apt here, where the Appellant not only failed to argue the issue in his opening brief, but expressly conceded it, consequently focusing the attention of the Appellee and of this court on other issues. Mr. Holbert waived any argument as to whether the August 12 restraint constituted relevant conduct, although we are satisfied that it does under U.S.S.G. §1B1.3(a)(1)(A) and § 1B1.3(a)(2) (offenses under § 2K2.1 must be grouped according to § 3D1.2(d)). We affirm the two-level adjustment for restraint of a victim.

**B.    Application of U.S.S.G. § 4A1.1(b)**

Mr. Holbert also submits that the district court erred in assigning him two criminal history points pursuant to U.S.S.G. § 4A1.1 (b), which provides that in calculating a defendant's criminal history category, the district court is to "[a]dd **2** points for each prior sentence of imprisonment of at least sixty days not counted in (a)." A "sentence of imprisonment" is a sentence of incarceration and refers to the maximum sentence imposed. U.S.S.G. § 4A1.2 (b)(1).

On June 7, 1999, Mr. Holbert was charged in Utah state court with a domestic violence related assault. He was sentenced to 90 days in jail, all of which was suspended on payment of a fine and successful completion of probation. Holbert was arrested on September 27 and the following day the court "impose[d] 90 days jail and grant[ed] the defendant credit for time served and two

for one." Aplt. Br. at 7. "Two for one" presumably means that, should the defendant adhere to jail regulations, he would be granted two days of credit for each day served.

We agree with the district court that the application of § 4A1.2(b) was appropriate because a 90-day sentence was imposed. Criminal history points given under § 4A1.2 (b) are based on the sentence pronounced, not the length of time actually served. U.S.S.G. § 4A1.2, cmt. n.2. Regardless of Holbert's potential compliance with jailhouse regulations and the possibility of release after serving only 45 days, the original imposition of a 90-day sentence warrants the assignment of two criminal history points under § 4A1.2(b).

AFFIRMED.