**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 24 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 02-1062

LAMAR BLACKWELL,

Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 00-CR-515-D)**

---

Submitted on the briefs:

John W. Suthers, United States Attorney, and Andrew A. Vogt, Assistant U.S. Attorney, Denver, Colorado, for Plaintiff-Appellee.

Michael G. Katz, Federal Public Defender, and Robert W. Pepin, Assistant Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

---

Before **SEYMOUR** , **EBEL** , and **O'BRIEN** , Circuit Judges.

---

**SEYMOUR** , Circuit Judge.

Defendant Lamar Blackwell was convicted, following a jury trial, of one count of possession of a firearm by a previously convicted felon in violation of 18 U.S.C. § 922(g)(1). The pre-sentence report recommended two sentence enhancements: a four-level enhancement for possessing a gun in connection with a state offense of felony menacing, pursuant to U.S.S.G. § 2K2.1(b)(5), and a three-level "official victim" enhancement under U.S.S.G. § 3A1.2(a). The district court overruled Mr. Blackwell's objection to the enhancements and sentenced him to seventy months' imprisonment, to be followed by a three-year term of supervised release. Mr. Blackwell appeals only his sentence, specifically the two enhancements adopted by the district court. [1] We affirm in part and reverse in part. [2]

---

[1] Counsel are reminded of the requirement of 10th Cir. R. 28.2(A)(2) that it is the duty of appellant to include in his brief the contested judicial pronouncement on the sentencing issues by attaching the relevant transcript pages. As specified in Rule 28.2(A), this is in addition to the inclusion of these pages in an appendix. It is appellee's responsibility to include the material if appellant does not. 10th Cir. R. at 28.2(B). We admonish counsel for both parties in this case for failing to follow these rules.

[2] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

# I

The evidence showed that at approximately 2:00 a.m. on a Sunday morning, four Denver police officers were called to a local truck stop to assist a private security officer in dispersing a large crowd of young people who had congregated there after local nightclubs closed. This type of gathering was apparently a frequent occurrence at the truck stop.

While there, Officer Haney noticed a red dot moving across his chest and flashing in his eyes. The dot was emanating from a particular car parked next to the gas pumps. Officer Haney could see the car's driver holding the steering wheel; he could also see the front-seat passenger (defendant Mr. Blackwell) and the partial face of someone in the back seat. The red dot was coming from the front-seat passenger's hands, and the officer recognized it as usually related to a laser sight connected to a gun to assist in targeting the gun. Officer Haney was uncertain whether he told his fellow officers about the gun. The officers split into two groups of two and approached the car, which slowly began to move. The officers caught up with the car, and Officer Haney knocked on the front passenger side window.

While approaching the car, Officer Haney noticed the passenger lean over, as though placing something in front of himself, and then sit back up. After Officer Haney removed Mr. Blackwell from the car, patted him down, and placed

him in the squad car, Officer Haze found a nine-millimeter gun with an attached laser sight under the passenger front seat. All three occupants of the car were arrested. Initially, Mr. Blackwell was charged with felony menacing.

Officer Haze also saw the red dot and he testified it crossed the bodies of the other officers, although he was unsure of its origin. While walking with Officer Haney toward the car, Officer Haze predicted they would find a laser pointer, although he admitted concern that it might be a laser sight from a gun. He testified that after Officer Haney removed defendant Mr. Blackwell from the car, Officer Haze found the weapon under the front passenger seat. Officer Haze testified Officer Haney did not warn him that there might be a gun. Both Officers Haney and Haze testified that they would have released Mr. Blackwell if they had not found a gun.

The truck stop security guard also saw the red light coming from a gold-colored car and pointed this out to the police officers. The security guard knew the light was coming out from the driver's side of the car, but could not tell if the source was the driver or the front-seat passenger.

Officer Medina was also on the scene and he noticed the red beam of light, which he assumed was a laser pointer. He testified that the security officer pointed out the source of the light. After reaching the car, Officer Medina removed the back-seat passenger from behind the driver. The fourth officer,

Officer Ayers, did not see the red laser light but was told about it by the security guard. After approaching the car, Officer Ayers told the driver to keep his hands on the steering wheel and ultimately arrested him. Officer Ayers further confirmed that in his written report regarding the incident he had described Officer Haze, not Officer Haney, as the one who removed the front-seat passenger.

Subsequent field evidence demonstrated that it would have been possible to pass the gun underneath the passenger seat from back to front. At trial, Mr. Blackwell stipulated to the facts that he had previously been convicted of a felony and that the gun had been transported in interstate commerce. The jury found him guilty of the single felon-in-possession charge. As previously noted, he appeals only his sentence enhancements.

We review the district court's factual findings in support of a sentence enhancement for clear error, *United States v. Valdez-Arieta*, 127 F.3d 1267, 1270 (10th Cir. 1997), and the court's interpretations of the sentencing guidelines de novo. *See United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997).

## II

The probation department recommended that Mr. Blackwell's sentence be enhanced under U.S.S.G. § 2K2.1(b)(5) on the theory that he possessed the

weapon in connection with the state crime of felony menacing. Under Colorado law, "[a] person commits the crime of menacing if, by any threat or physical action, he [] knowingly places or attempts to place another person in fear of imminent serious bodily injury." COLO. REV. STAT. § 18-3-206. If committed by use of a deadly weapon or article used in a manner to cause a person to believe the article is a deadly weapon, it is a class 5 felony. *Id.* § 18-3-206(1)(a).

In order to support a sentence enhancement under U.S.S.G. § 2K2.1(b)(5), "a preponderance of the evidence must show that [the defendant] possessed a firearm in connection with another felony." *United States v. Hurlich,* 293 F.3d 1223, 1227 (10th Cir. 2002). Mr. Blackwell contends the evidence was insufficient to establish that he pointed the gun at the officers or that the officers were in fear of imminent bodily threat. We disagree.

The record reflects that three of the four officers personally saw the red beam pass over their own bodies and/or those of their fellow officers. The private security guard saw a similar occurrence. Officer Haney was certain that the light source emanated from something in the front-seat passenger's hands. The security guard confirmed that the light was coming through the driver's side of the car, although he was unsure which of the car's occupants appeared to be aiming the beam. There was no evidence that either of the other occupants appeared to be holding or pointing the laser-equipped weapon. The back-seat

passenger denied having seen a gun at all.  Officer Haney further testified he saw the front-seat passenger (undisputedly Mr. Blackwell) lean forward and lower his hands as though placing something under the front seat, which is where the gun was found minutes later.  This evidence was clearly sufficient for the district court to determine by a preponderance that Mr. Blackwell pointed a laser-sighted weapon at the officers.

Mr. Blackwell also argues it is apparent the officers were not placed in fear of serious bodily harm because they knew the beam could have come from a harmless laser pointer and because Officer Haney started approaching the car without warning his fellow officers of the possibility of a weapon aimed at them.  However, Officers Haney and Haze both testified they thought the light could be from a gun's laser sight.  Officers Haney and Ayers explained it would not have been advisable to have yelled "gun" under the circumstances.  Moreover, under Colorado law, felony menacing is a general intent crime and it is enough that the defendant's conduct was sufficient to place someone in fear of imminent serious bodily injury.  *See People v. Dist. Court*, 926 P.2d 567, 571 (Colo. 1996).  The district court did not err in enhancing Mr. Blackwell's sentence pursuant to U.S.S.G. § 2K2.1(b)(5).

**III**

The district court also added a three-point enhancement under U.S.S.G. § 3A1.2(a), which covers official victims and applies when the victim was a government officer or employee *and* "the offense of conviction was motivated by such status." The application notes explain that "'[m]otivated by such status' . . . means that the offense of a conviction was motivated by the fact that the victim was a government officer or employee . . . ." U.S.S.G. § 3A1.2, cmt. n.4.

Over Mr. Blackwell's objections, the district court found that "under 3A1.2, the officers were in effect official victims, meaning that they were targeted . . . because of their status . . . of being police officers." Rec., vol. 7 at 25. In making this determination, the court appears to have considered not only the specific offense, but also other relevant conduct. *See id.* at 24-25. On appeal, Mr. Blackwell argues that this guideline is inapplicable because the offense of conviction is possession of a weapon by a felon, which is not a charge encompassing menacing a police officer. *See United States v. Powell*, 6 F.3d 611, 613 (9th Cir. 1993). For reasons that follow, we agree that U.S.S.G. § 3A1.2(a) applies only to the offense of conviction, not to that offense accompanied by relevant conduct.

In *United States v. Holbert*, 285 F.3d 1257 (10th Cir. 2002), we contrasted the meaning of "offense" and "offense of conviction" as described in the

victim-related adjustments section (Chapter 3) of the Sentencing Manual. The particular enhancement at issue in *Holbert* was § 3A1.3, which provides for a two-point enhancement "[i]f a victim was physically restrained in the course of the offense . . . ." U.S.S.G. § 3A1.3. The defense argued that § 3A1.3 does not encompass all relevant conduct, but rather that "'in the course of the offense' actually means 'in the course of the *offense of conviction* .'" *Holbert*, 285 F.3d at 1260.

We recognized in *Holbert* that under U.S.S.G. § 1B1.3, the Chapter Three adjustments (which include vulnerable victims, hate crimes, official victims, and restrained victims) are generally to be determined on the basis of various categories of relevant conduct. *Id*. We noted that the guidelines do not define "in the course of the offense," but do define "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." *Id.* (quoting § 1B1.1, cmt. n.1(l)). "Thus, [§ 1B1.3] creates a presumption that, unless § 3A1.3 otherwise specifies, we will consider relevant conduct in its application." *Id.*

By comparison, we pointed out the guidelines "indicate that the phrase ['offense of conviction'] encompasses only facts immediately related to the specific offense for which the defendant was convicted . . . ." *Id.* at 1261 n.3. The definition of "offense" as "offense of conviction and all relevant conduct,"

*see* U.S.S.G. § 1B1.1, cmt. n.1(l), thus implies that "offense of conviction" is a subpart of the term "offense." *Id. See also United States v. Pressler*, 256 F.3d 144, 157 n.7 (3d Cir.), *cert. denied*, 534 U.S. 1013 (2001) (noting guidelines do not define "offense of conviction" and concluding the phrase "includes only the facts underlying the specific criminal offense for which the defendant was convicted," making the term offense of conviction narrower than that of offense).

In *Holbert*, the defendant sought to compare U.S.S.G. § 3A1.3, the victim restraint guideline applicable to him, with the hate crimes and vulnerable victim enhancements covered by § 3A1.1. A vulnerable victim is defined as "a person[] who is a victim of the offense of conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct) . . . ." U.S.S.G. § 3A1.1, cmt. n.2. Because the language found in § 3A1.3 covering restrained victims refers to "a victim [] physically restrained in the course of the offense," with no mention of relevant conduct, Mr. Holbert argued that relevant conduct was not to be considered under that section. We disagreed, reasoning that

> if the Guidelines authors wanted to limit the application of § 3A1.3 to the offense of conviction, as they did in § 3A1.1(a), then they would have used similarly restrictive language. That they did not suggests their deliberate choice of the term "offense," which, by its definition, includes relevant conduct. When the Sentencing Commission intends to limit the applicability of a victim-related enhancement, it does so explicitly. *See also* U.S.S.G. § 3A1.2(a) ("If . . . the victim was a government officer and the *offense of conviction* was motivated by such status . . . ." (emphasis added)).

*Holbert*, 285 F.3d at 1261. We further noted, in comparing the Introductory Commentary of Parts A and B of Chapter Three, that the Part B (Role in Offense) commentary contains a blanket instruction to consider a defendant's role based on U.S.S.G. § 1B1.3 relevant conduct, while Part A (victim-related adjustments) does not. *Id.* at 1261-62. We explained that the Part B blanket instruction otherwise "would clash with the directions in § 3A1.1(a) and § 3A1.2(a) *not* to consider relevant conduct." *Id.* at 1262. In applying these two sections, "judges are to consider victims and property that are objects of the 'offense of conviction.'" *Id.*

Our suggestion in *Holbert* that § 3A1.2(a) requires the offense of conviction to be motivated by the status of an "official victim" finds support from our sister circuits. *See*, *e.g.*, *United States v. Goolsby*, 209 F.3d 1079, 1081-82 (8th Cir. 2000) (holding where offenses of conviction were conspiracy to distribute cocaine base and possession with intent to distribute, defendant's assault of officer during escape from custody not subject to official victim enhancement of § 3A1.2); *United States v. Drapeau*, 121 F.3d 344, 349 (8th Cir. 1997) (noting § 3A1.2(a) provides that its enhancement is only proper where government official is victim of defendant's offense of conviction; hence district court erred in considering other relevant conduct); *United States v. Ortiz-Granados*, 12 F.3d 39, 42 n.4 (5th Cir. 1994) (recognizing § 3A1.2(a)

inapplicable because defendant's "offense conviction–possessing, importing, and conspiring to possess and import marijuana–was not motivated by the Border Patrol agents' status as government officers or employees"); *Powell*, 6 F.3d at 613 (holding § 3A1.2(a) clearly inapplicable to defendant's guilty plea to charge of felon in possession of firearm because offense of conviction not motivated by official status of law enforcement officer). *See also United States v. Morrow*, 925 F.2d 779, 782 (4th Cir. 1991) (§ 3A1.2 enhancement improper because defendant convicted as felon in possession of firearm under 18 U.S.C. § 922(g)(1); crime not motivated by status of police officers who arrested him).

To support its inclusion of relevant conduct in applying the official victim enhancement in the instant case, the district court erroneously relied on *United States v. Zaragoza-Fernandez*, 217 F.3d 31 (1st Cir. 2000), and *United States v. Gonzales*, 996 F.2d 88 (5th Cir. 1993). Both cases are inapposite to the present controversy because they address the application of guideline enhancement provision § 3A1.2 *(b)* rather than § 3A1.2 *(a)*. The two subsections focus on significantly different factors to determine their appropriate application to sentence enhancements. Section 3A1.2(b) provides for an enhancement where "during the *course of the offense* or immediate flight therefrom, the defendant . . . assaulted [an] officer . . . ." U.S.S.G. § 3A1.2(b) (emphasis added). As we pointed out in *Holbert*, "course of the offense" includes relevant conduct.

Conversely, § 3A1.2(a) covers official victims and applies only when the *offense of conviction*, exclusive of relevant conduct, was motivated by the victim's status.

The offense of conviction in this case was possession of a firearm by a felon. Nothing about the status of the officers in any way motivated the commission of that offense, nor were the officers victims of that offense. We therefore hold that the district court erred in enhancing Mr. Blackwell's sentence under U.S.S.G. § 3A1.2(a). We recognize, of course, that in applying the enhancement, the district court did not have the benefit of this court's analysis in *Holbert*.

The judgment of the district court is **AFFIRMED** in part and **REVERSED** in part. The matter is **REMANDED** with instructions to resentence Mr. Blackwell without the enhancement specified in U.S.S.G. § 3A1.2(a).