# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-2455
_____

United States of America

*Plaintiff - Appellee*

v.

Christian Collins

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: March 12, 2014
Filed: June 11, 2014

_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Christian Collins pled guilty to being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 100 months' imprisonment. Collins appeals his sentence, arguing that the district court improperly applied two enhancements under United States Sentencing Guidelines ("USSG")

§§ 3A1.2(c)(1) and 3C1.1.  For the reasons discussed below, we vacate Collins's sentence and remand for resentencing.

## I.

On May 29, 2012, St. Louis Metropolitan Police officers pursued a stolen vehicle in which Collins was a passenger.  During the pursuit, the driver lost control and crashed the vehicle.  Officers observed Collins flee on foot and ordered him to stop.  After a short pursuit, Collins was apprehended and placed in custody.   The officers transported Collins to the police station.

Officers at the scene of the crash located and seized a loaded firearm in a nearby flowerpot.  At the police station, Collins said he wanted to make a statement regarding the firearm.  Collins was placed in an interview room, where his right leg was shackled to the floor.  Collins orally confessed to Detective David Rudolph that he had been in possession of the firearm.  Collins then provided a written statement, describing how he had found the weapon in the vehicle and "stashed" it in the flowerpot.  After Collins finished writing the statement, Detective Rudolph signed it and asked Collins to sign it.  As Collins was about to do so, Detective Rudolph told Collins that he needed to be honest about how long he had possessed the firearm because officers would be tracing it to determine whether it had been used in other crimes.  At this point, Collins's demeanor changed, and he said that the statement "is going to put me in jail, and let's throw it away."  Collins then grabbed the statement, put it behind his back, and tried to destroy it.  Detective Rudolph told Collins to give him the statement because it was going to be seized as evidence.  When Detective Rudolph attempted to retrieve the statement, Collins stood up, grabbed the pen off of the table, and twice tried to stab Detective Rudolph in the face with the pen.  Detective Rudolph punched Collins in the face and continued to try to retrieve the written statement.  Collins crumpled the statement when Detective Rudolph tried to grab it from him.  Detective Rudolph was unable to retrieve the statement because Collins kicked him in the right thigh and groin.  Eventually, another officer entered

the room, and he and Detective Rudolph were able to control Collins and seize the torn statement.

On February 6, 2013, Collins entered a plea agreement with the Government, admitting to being a felon in possession of a firearm. Following Collins's guilty plea, the United States Probation Office prepared a Presentence Investigation Report ("PSR"), which determined that Collins's base offense level was 22 and included two guidelines enhancements. First, the PSR recommended a two-level enhancement pursuant to USSG § 3C1.1 because Collins willfully attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the felon-in-possession offense by attempting to destroy evidence—namely, his written statement. Second, the PSR recommended a six-level enhancement pursuant to USSG § 3A1.2(c)(1) because Collins knew that Detective Rudolph was a law enforcement officer and Collins assaulted Detective Rudolph in a manner creating a substantial risk of serious bodily injury. Lastly, the PSR recommended a three-level reduction under USSG § 3E1.1 because of Collins's acceptance of responsibility. These recommendations resulted in a total offense level of 27.

Collins objected to the application of the two enhancements. At his sentencing hearing, the Government presented the testimony of Detective Rudolph in support of the enhancements. After hearing the evidence, the district court overruled Collins's objections and adopted the PSR's recommended adjustments. The district court sentenced Collins to a term of 100 months' imprisonment, which was within the advisory guidelines range.

## II.

Collins argues on appeal that the district court erred by applying the two guidelines enhancements. We review *de novo* "[t]he legal conclusions a district court reaches in order to apply an enhancement for purposes of calculating an advisory

guidelines range . . . while factual findings underpinning the enhancement are reviewed for clear error." *United States v. Septon*, 557 F.3d 934, 936 (8th Cir. 2009).

## A.

USSG § 3C1.1 provides a two-level enhancement "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." "The district court has broad discretion to apply section 3C1.1 to a wide range of conduct." *United States v. Billingsley*, 160 F.3d 502, 506 (8th Cir. 1998) (alteration omitted) (quoting *United States v. Lyon*, 959 F.2d 701, 707 (8th Cir. 1992)). Collins argues that the district court erred by applying the enhancement based on his attempt to destroy his written statement for two reasons.

First, Collins argues that he did not act willfully because "[h]is conduct was a panicked reaction to Detective Rudolph's sudden revelation of his intent to pursue other unspecified and unnamed offenses." However, the Government presented sufficient evidence from which the court could find that Collins willfully attempted to obstruct justice. In order to act willfully, the defendant must "consciously act with the purpose of obstructing justice." *United States v. Watts*, 940 F.2d 332, 332-33 (8th Cir. 1991) (quoting *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir. 1990)). A district court can find that a defendant consciously acts with the purpose of obstructing justice when his "misconduct occurs with knowledge of an investigation, or at least with a correct belief that an investigation is probably underway." *United States v. Dierling*, 131 F.3d 722, 738 (8th Cir. 1997) (quoting *United States v. Oppedahl*, 998 F.2d 584, 586 (8th Cir. 1993)). Detective Rudolph testified that, after Collins stated he wanted to throw away the statement, Collins grabbed the statement off of the table, put it behind his back, and attempted to destroy it. Despite Detective Rudolph telling Collins that the statement was evidence and would be seized, Collins

refused to give Detective Rudolph the statement and continued his attempt to destroy it. All of this occurred while Detective Rudolph was interviewing Collins about his being a felon in possession of a firearm, and thus Collins clearly knew that an investigation was underway. Therefore, the district court did not commit clear error when it found that Collins's attempt to destroy the written confession was a "conscious[] act with the purpose of obstructing justice." *Watts*, 940 F.2d at 332-33 (quoting *Stroud*, 893 F.2d at 507).

Second, Collins argues that he did not intend to obstruct or impede the investigation or prosecution of the instant offense of conviction—his being a felon in possession of a firearm. He contends that the evidence only supports the conclusion that he intended to obstruct the investigation of a different offense because he attempted to destroy the statement only after Detective Rudolph told him that officers would be tracing the firearm to determine whether it had been used in other crimes. However, sufficient evidence supports the conclusion that Collins intended to obstruct the investigation into his felon-in-possession offense. In the written statement, Collins admitted to finding the firearm in the stolen vehicle and then stashing it in the flowerpot. The statement limits Collins's possession of the firearm to the time he was in the stolen vehicle until he discarded it in the flowerpot and does not contain a confession to any other crime. Therefore, it was not clearly erroneous for the district court to conclude that Collins intended to obstruct the investigation or prosecution of his felon-in-possession offense.

Accordingly, the district court properly applied the § 3C1.1 enhancement for obstruction of justice.

### B.

USSG § 3A1.2(c)(1) provides for a six-level enhancement "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer,

assaulted such officer during the course of the offense or immediate flight therefrom." The district court applied this enhancement after concluding that Collins's attempts to stab Detective Rudolph with a pen created a substantial risk of serious bodily injury and occurred in close temporal proximity to Collins's offense and arrest. Collins argues that the district court improperly applied the enhancement because his assaultive conduct occurred during his post-arrest interrogation at the police station, not "during the course of the offense or immediate flight therefrom." We agree.

Collins's argument requires us to interpret the guidelines, and "[w]e employ basic rules of statutory construction when interpreting the Guidelines." *United States v. Godsey*, 690 F.3d 906, 910 (8th Cir. 2012) (quoting *United States v. Davis*, 668 F.3d 576, 577 (8th Cir. 2012)). "We begin our review by examining the plain language of the Guidelines, 'and where that is unambiguous we need look no further.'" *United States v. Salem*, 587 F.3d 868, 870 (8th Cir. 2009) (quoting *United States v. Abumayyaleh*, 530 F.3d 641, 650 (8th Cir. 2008)). In doing so, we must keep in mind that "[i]t is 'a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a [guideline].'" *United States v. Johnson*, 703 F.3d 464, 468 (8th Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)).

Section 3A1.2(c)(1) applies only if the assaultive conduct occurs "during the course of the offense or immediate flight therefrom." Collins argues that his assault on Detective Rudolph did not occur during the course of the offense or immediate flight therefrom because it occurred during his post-arrest interrogation at the police station. The Government counters that Collins's assaultive conduct occurred during "the course of the offense" because the assault constituted relevant conduct to the offense. To be sure, the guidelines provide a definition of "offense" as "the offense of conviction and all relevant conduct under § 1B1.3." USSG § 1B1.1 comment. (n.1(H)). And relevant conduct is conduct "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of

-6-

attempting to avoid detection or responsibility for that offense." USSG § 1B1.3. Thus, the Government argues that Collins's assaultive conduct, which occurred during the course of an attempt to avoid detection or responsibility for his felon-in-possession offense, is relevant conduct of the offense for purposes of § 3A1.2(c)(1).

However, the definition of "offense" goes on to state that it applies "unless a different meaning is specified or is otherwise clear from the context." USSG § 1B1.1 comment. (n.1(H)). We believe that it is clear from the context of § 3A1.2(c)(1) that the term "offense" as used in § 3A1.2(c)(1) was not intended to include the broad concept of relevant conduct. Section 3A1.2(c)(1) requires the assault to occur during a more limited temporal period than relevant conduct would; that is, the assault must take place "during the course of the offense or immediate flight therefrom." USSG § 3A1.2(c)(1). Relevant conduct, however, includes assaultive conduct that occurs "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3. Therefore, if § 3A1.2(c)(1) were to include relevant conduct as defined in § 1B1.3, the assaultive conduct could occur well after a defendant's immediate flight from the course of the offense. Such a reading would be inconsistent with the plain language of § 3A1.2(c)(1).

Similarly, reading § 3A1.2(c)(1) to include all relevant conduct would make the phrase "immediate flight therefrom" surplusage. Relevant conduct includes any conduct that occurs "in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3. Thus, it necessarily includes assaultive conduct that occurs during "immediate flight" from the course of the offense because the assaultive conduct occurs "in the course of attempting to avoid detection or responsibility for that offense." *Id.* If the term offense as used in § 3A1.2(c)(1) were to include relevant conduct as defined in § 1B1.3, § 3A1.2(c)(1)'s additional language "immediate flight therefrom" would serve no purpose. Accordingly, to interpret "course of the offense" to include relevant conduct would ignore a cardinal rule of

statutory construction and render "immediate flight therefrom" superfluous. *See Johnson*, 703 F.3d at 468. Therefore, the context of § 3A1.2(c)(1) compels the conclusion that "course of the offense" does not include the broader concept of relevant conduct as defined in § 1B1.3(a).[1]

Thus, we are left to determine whether Collins's assaultive conduct occurred "during the course of the offense or immediate flight therefrom." At the time of the assault, Collins was under arrest and shackled to the floor of an interview room at the police station. He no longer actually or constructively possessed the firearm, and therefore the felon-in-possession offense had ended. *Cf. United States v. Chatmon*, 742 F.3d 350, 352 (8th Cir. 2014) (holding that in order to violate § 922(g)(1), a defendant must knowingly possess a firearm); 18 U.S.C. § 922(g)(1) (prohibiting the possession of a firearm by a felon). The Government argues that the "course of the offense" is a broader concept that includes an assault that occurs during the course of the investigation of the offense. The guidelines do not define "course of the offense." At a minimum, we are convinced that, under the circumstances of this case,

---

[1]The Government argues that, in *United States v. Blackwell*, 323 F.3d 1256 (10th Cir. 2003), the Tenth Circuit held that § 3A1.2(c)(1)'s "course of the offense" language includes relevant conduct. However, in *Blackwell*, the court was deciding whether the district court properly applied an enhancement under § 3A1.2(a), which requires that the "offense of conviction" be motivated by a government officer's status. *Id.* at 1259-62. The court was not deciding whether the defendant's assault on a police officer occurred "during the course of the offense or immediate flight therefrom" under § 3A1.2(c)(1). *See id.* As the court explained, "[t]he two subsections focus on significantly different factors to determine their appropriate application to sentence enhancements." *Id.* at 1261. The court pointed out that, in *United States v. Holbert*, 285 F.3d 1257, 1261 (10th Cir. 2002), it had concluded "course of the offense" includes relevant conduct as defined in § 1B1.3. *Blackwell*, 323 F.3d at 1261. However, *Holbert* involved the restraint-of-victim enhancement under § 3A1.3, which only requires that a victim be physically restrained in the course of the offense and does not include the limiting language "immediate flight therefrom." 285 F.3d at 1261.

the assault, which occurred after Collins had been arrested, transported to the police station, and shackled to the floor of an interview room, did not occur during the course of the offense.

Moreover, the Government does not argue that Collins's assault on Detective Rudolph occurred during immediate flight from the course of the felon-in-possession offense, and we conclude that it did not. Because Collins had been arrested, was shackled to the floor of an interview room at the police station, and made no attempt to flee, the assault did not occur during immediate flight from the felon-in-possession offense. Accordingly, we conclude that the district court erred in applying the six-level enhancement under § 3A1.2(c)(1).

## III.

For the foregoing reasons, we vacate Collins's sentence and remand for resentencing.

_____