CARSON, Circuit Judge.
*1119 In this case, we address the meaning of "coercive" behavior in the context of United States Sentencing Guideline § 2G1.1(b)(1). That Guideline provides a four-level enhancement when a defendant uses coercion in promoting a commercial sex act. Defendant Markell Quashun Sweargin ("Defendant") (1) posted a sex video of the Victim when she attempted to no longer engage in prostitution; (2) forced her to post provocative photos online; and (3) beat her for refusing to have sex with a person who answered an advertisement on a prostitution-focused website. Because these acts demonstrate that Defendant impressed his power over the Victim and the Victim knew she would face negative consequences for failing to succumb to Defendant's pressure, we conclude that Defendant did, in fact, coerce her. Accordingly, we affirm.
I.
Hobbs, New Mexico law enforcement officer Jeremy Kirk responded to a domestic disturbance call at a local hotel. Upon arrival, Kirk approached a crying, scared, shaking woman. That woman-the Victim in this case-told Kirk that Defendant showed up in her room, became angry, and started an argument. Defendant escalated the argument by punching her, choking her, and refusing to let her leave the hotel room. Kirk observed that the Victim's neck was red and that she had fresh scratches and scrapes on the side of her neck and chest. Law enforcement then arrested Defendant for battery on a household member.
Law enforcement interviewed the Victim at the police department near the time of the arrest. The Victim told police that she, Defendant, and a minor female had come to Hobbs from Lubbock, Texas to go to the casino. The Victim said that once in Hobbs, Defendant had hinted that she should prostitute herself. The Victim balked at the idea and told Defendant as much. Following the exchange, Defendant and the minor female left the hotel room to go to a fast food restaurant. Shortly after they had left, a man knocked on the Victim's hotel room door. The Victim let him in the room. The man immediately asked the Victim what she would do for $80. She replied that she would do nothing. The man then said, "That's not what your ad says," and left. The Victim told law enforcement that she believed Defendant had made an ad for her on backpage.com-a website which, at the time of the events in question, was often used to promote prostitution. When Defendant returned to the hotel room and learned that the Victim had not made a deal with the man, he became angry, punched and choked her.
Law enforcement also seized two cell phones at the time of Defendant's arrest. The Victim told law enforcement that Defendant had used one of the phones strictly to contact people who were responding to advertisements for women.
Local law enforcement referred the case to the United States Department of Homeland Security for federal prosecution. Evidence on the cell phone revealed that from May 2017 through June 2017, Defendant had pressured the Victim to engage in prostitution. Defendant blackmailed the Victim by threatening to post a sex video of them online if she refused to prostitute herself. In addition, the Victim informed law enforcement that Defendant had taken *1120 provocative photos of her and had forced her to have those photos online.
Defendant pleaded guilty to an Information charging him with knowingly transporting a person in interstate commerce from the State of Texas to the State of New Mexico with the intent that the person engage in prostitution in violation of New Mexico Statute § 30-9-2 in violation of 18 U.S.C. § 2421(a). In his presentence report, the probation officer recommended that the district court apply a four-level enhancement pursuant to Guideline § 2G1.1(b)(1) because Defendant used fraud or coercion while promoting a commercial sex act.
Defendant challenged the four-level enhancement for coercion under Guideline § 2G1.1(b)(1). In his objection to the presentence report, Defendant included an unsworn "statement of the offense" from the Victim's counsel. Defendant additionally directed the district court to an unsworn, written statement from the Victim. In these statements, she claimed that she had acted voluntarily, that the argument at the hotel had not been about prostitution, that Defendant did not choke her, and that Defendant had not coerced or forced her into any activity. The Victim additionally said that she loved Defendant and that she was expecting his child. A federal agent testified during a hearing that the Victim was uncooperative during the federal investigation by taking blame for the situation and saying that "she made it up."
The district court overruled Defendant's objection. The district court credited the testimony of the government witnesses about what happened the evening of the arrest. The district court likewise concluded that the Victim's assertion that she had fabricated the physical abuse in her initial statement was less persuasive because it was inconsistent with the evidence and because her desire to have Defendant released from custody cut against her credibility. The district court then held that both the threat to post the sex video online and the physical assault established coercion. The district court said that although the circumstances surrounding the sex video occurred prior to the trip to the casino, they were not so remote in time for the court to conclude that they had nothing to do with the charged criminal activity. A federal agent testified that she believed that Defendant and the Victim's communications regarding the video were related to prostitution, and the district court credited the agent's testimony. Further evidence showed that Defendant had been involved in prostitution and had posted ads featuring the Victim on backpage.com. The district court thus concluded that this testimony was relevant to the events that took place at the casino.
As to the physical abuse Defendant inflicted on the Victim in New Mexico, the district court said that no authority required that the coercion occur prior to crossing state lines. The district court thus refused to construe Guideline § 2G1.1(b)(1) so narrowly and accordingly held that the four-level enhancement was also appropriate because of the physical assault.
The district court imposed the four-level enhancement and sentenced Defendant to 30 months imprisonment-the middle of the applicable Guideline range. Defendant now appeals. We exercise jurisdiction under 18 U.S.C. § 3742(a)(2), and affirm Defendant's sentence for the reasons that follow.
II.
We review the district court's interpretation of a sentencing guideline-a question of law-de novo. United States v. Robertson, 350 F.3d 1109, 1112 (10th Cir. 2003). "We interpret the Sentencing Guidelines according to accepted rules of statutory construction." Id. When interpreting *1121 a guideline, we look not only to the language in the guideline itself, but also to the Sentencing Commission's interpretive and explanatory commentary to the guideline. Id. The Sentencing Commission's commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Id. at 1113 (citing Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) ).
III.
On appeal, Defendant contends the evidence does not support the district court's decision to apply Guideline § 2G1.1(b)(1). The relevant application note states that subsection (b)(1) "provides an enhancement for fraud or coercion that occurs as part of the offense and anticipates no bodily injury." U.S.S.G. § 2G1.1 Application Note 2 (emphasis added). The Application Note further provides that "[f]or purposes of subsection (b)(1), 'coercion' includes any form of conduct that negates the voluntariness of the victim ." Id. (emphasis added). To support his claim, Defendant posits two arguments based on the language of the application note. First, Defendant argues that neither the posting of the sex video online before the trip to Hobbs nor the fight that occurred after the Victim refused to prostitute herself occurred as part of the offense. Second, Defendant argues that neither of those events coerced the Victim.
In "reviewing a district court's application of the Sentencing Guidelines, we review legal questions de novo and we review any factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." United States v. Wolfe, 435 F.3d 1289, 1295 (10th Cir. 2006).
A.
Defendant first raises the issue of whether a district court may consider all relevant conduct in the application of § 2G1.1(b)(1) or whether the district court is limited to considering conduct that occurs only during the offense of conviction. "We interpret the Sentencing Guidelines as though they were a statute or court rule, with ordinary rules of statutory construction." United States v. Holbert, 285 F.3d 1257, 1260 (10th Cir. 2002). Thus, where "the language of the Guidelines is clear and unambiguous, it must be followed except in the most extraordinary situation where [it] leads to an absurd result contrary to clear legislative intent." Id. (internal quotation marks omitted).
Defendant contends that the phrase "occurs as part of the offense," in Guideline § 2G1.1(b)(1) does not encompass all relevant conduct. Instead, Defendant asserts that the coercion must occur at the same time as the specific offense conduct and that the Victim's will must be overborne at that time. Essentially, he believes that the phrase "occurs as part of the offense" actually means "occurs as part of the offense of conviction ." The Guidelines do not provide a definition for the phrase "occurs as part of the offense." We have, however, previously addressed the similar phrase "in the course of the offense" as used in § 3A1.3. Id. As in Holbert, we observe that the relevant conduct provision of the Guidelines, Guideline § 1B1.3, provides that "[u]nless otherwise specified, ... specific offense characteristics ... in Chapter Two [including the coercion provision in Guideline § 2G1.1(b)(1) ], shall be determined on the basis of" the various categories of relevant conduct. U.S.S.G. § 1B1.3 (emphasis added). "This section creates a presumption that, unless [Guideline § 2G1.1(b)(1) ] otherwise specifies, we will consider relevant *1122 conduct in its application." Holbert, 285 F.3d at 1260.
Guideline § 2G1.1(b)(1) does not " 'otherwise specify' a different meaning, but instead reinforces the instructions in Guideline § 1B1.3 to consider relevant conduct." Id. Although the Guidelines do not define the phrase "occurs as part of the offense," the Background comment to Guideline § 1B1.3 provides that conduct that is not formally charged or is not an element of the offense of conviction may inform the determination of the applicable guideline sentencing range. U.S.S.G. § 1B1.3, cmt. Background. The comment further provides that Guideline § 1B1.3(a) "establishes a rule of construction by specifying, in the absence of more explicit instructions in the context of a specific guideline, the range of conduct that is relevant to determining the applicable offense level ...." Id. Accordingly, we hold that, for the purpose of applying Guideline § 2G1.1(b)(1), the defendant must have coerced the Victim as part of the offense, and that the language "occurs as part of the offense" includes any conduct for which the defendant is accountable under Guideline § 1B1.3 (Relevant Conduct).
Defendant forced the Victim to take provocative pictures to post online to promote his prostitution scheme, blackmailed the Victim by threatening to post a sex video online to compel her to engage in prostitution, and beat the Victim for refusing to prostitute herself. Although the posting of the sex video and the pictures online occurred prior to the trip to New Mexico and the beating occurred during the trip to New Mexico, each of those actions related to Defendant's prostitution of the Victim-the charged criminal activity. See U.S.S.G. § 1B1.3(a)(3) (providing that relevant conduct includes "all harm that resulted from the acts and omissions [willfully caused by Defendant] ... and all harm that was the object of such acts and omissions"). Accordingly, Defendant's conduct all occurred "as part of the offense."
B.
Having concluded that Defendant's relevant conduct occurred as part of the offense, we now turn to whether Defendant's conduct was coercive. According to Application Note 2 to Guideline § 2G1.1, "coercion" includes any form of conduct that "negates the voluntariness of the victim." The district court relied on two putative "coercive" incidents as the basis for the enhancement: (1) Defendant's threat to post a sex video of the Victim on the internet approximately one month before the trip to New Mexico, and (2) the physical altercation between Defendant and the Victim at the hotel. In its brief and at oral argument, the government additionally pointed to evidence in the record demonstrating that Defendant previously forced the Victim to post provocative photos of herself online to promote Defendant's prostitution scheme.
Defendant argues that his alleged coercive conduct did not negate the Victim's voluntariness. In support of that contention, Defendant points to the Victim's statement in which she denied that Defendant had forced, deceived, or coerced her to go on the trip to New Mexico. Defendant believes that the district court erred in discounting that subsequent statement. Defendant additionally asserts that no evidence in the record contradicts the Victim's assertion that she voluntarily traveled to New Mexico. Furthermore, Defendant believes that his threat to post the sex video online occurred too remotely in time to negate the Victim's consent to travel to New Mexico. He also believes that the physical assault could not have negated her voluntariness because it happened after the Victim rejected the man *1123 who responded to Defendant's advertisement.
We first address the government's contention that we owe extreme deference to the district court's credibility findings. We have long held that the "credibility of a witness at sentencing is for the sentencing court, who is the trier of fact, to analyze." United States v. Virgen-Chavarin, 350 F.3d 1122, 1134 (10th Cir. 2003) (quoting United States v. Deninno, 29 F.3d 572, 578 (10th Cir. 1994) ). "In other words, the district court's determination of a witness's credibility at a sentencing hearing is virtually unreviewable on appeal." Id. (internal quotation marks and brackets omitted).
The district court found the Victim's claim that she had fabricated her initial story was inconsistent with the evidence in the case. It went on to state that the Victim's desire for Defendant's release cut against her credibility. Accordingly, the district court rejected the Victim's re-constituted story as to the evening's events. As a reviewing court, we will not second guess the district court's credibility determination.
Even under a less deferential standard of review our result would be the same. Defendant's suggestion that the Victim's unsworn statement that he did not force her to go to New Mexico should prohibit the coercion enhancement is without merit. "Coercion ... has a more complex meaning than [Defendant] acknowledges." United States v. Anderson, 139 F.3d 291, 298 (1st Cir. 1998). Coercion often involves "an impending threat of some negative consequence that will affirmatively befall a person if he or she does not succumb to the pressure that is being exerted." Id. In this case, Defendant had the Victim under his control when she traveled to New Mexico. When the Victim had previously attempted to leave the prostitution lifestyle, Defendant threatened to post a sex video depicting her online. Defendant made good on that threat. That incident impressed on the Victim Defendant's power over her and substantially impaired her ability to choose her own course of conduct. In other words, Defendant negated the Victim's voluntariness. See id. (concluding that despite the victim's testimony that the defendant did not force her to go to another state, the defendant's actions in supplying her marijuana and raping her impaired her voluntariness).
In addition, we agree with the district court that Defendant's physical abuse following the Victim's refusal to prostitute herself constitutes coercion for purposes of the enhancement. The Victim told law enforcement that Defendant had beaten her up because he had been upset that she had not had any money to give him. When Defendant physically beat the Victim, he did not know that she would escape the hotel room and contact law enforcement. Moreover, he had posted an online advertisement for her sexual services. The record demonstrates that Defendant intended that she would engage in prostitution with the next person who responded to the online advertisement that he had posted. See United States v. Todd, 627 F.3d 329, 334 (9th Cir. 2010) (concluding that the defendant had an established practice of living off the earnings of the Victim and that the trier of fact could conclude that the defendant would follow the same pattern in the future because the defendant knew that he would use coercion to cause his sex workers to make money for him); see also Anderson, 139 F.3d at 298 (finding coercion where the record demonstrated that the Victim knew that bad things happened to those who crossed the defendant). This course of conduct convinces us that Defendant's beating of the Victim was coercive.
*1124 Finally, and perhaps most strongly, the Victim told law enforcement that Defendant took provocative photos of her and forced her to have them online. This conduct directly negates the Victim's voluntariness. He then drove her to New Mexico to prostitute her. Indeed, in his plea agreement, Defendant admitted that he transported the Victim in interstate commerce from Texas to New Mexico with the intent that she engage in prostitution. Because Defendant substantially impaired the Victim's ability to choose her own course of conduct, the district court correctly applied the coercion enhancement.
AFFIRMED.