**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff- Appellee,

v.

DAVID LEE YOUNG,

Defendant - Appellant.

No. 09-1326
(D. Colorado)
(D.C. No. 1:08-CR-00440-JLK-1)

**ORDER AND JUDGMENT***

Before **MURPHY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

After examining the briefs and appellate record, this court has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Accordingly, we

grant the parties' requests and order the case submitted without oral argument.

---

*This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

# I. INTRODUCTION

A jury convicted David Young of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1]  The district court sentenced Young to a term of imprisonment of seventy-six months, a sentence within the range set out in the advisory Sentencing Guidelines.  On appeal to this court, Young challenges both his conviction and sentence.  As to his conviction, Young asserts the district court erred in admitting at trial a tape recording of a telephone conversation he had with his sister on December 25, 2008.  As to his sentence, Young asserts the following three errors: (1) improperly enhancing his offense level four levels pursuant to U.S.S.G. § 2K2.1(b)(6); (2) improperly enhancing his offense level two levels pursuant to U.S.S.G. § 3C1.1; and (3) refusing to vary downward from the range set out in the advisory Sentencing Guidelines.  This court exercises jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and **affirms** the district court's judgment.

# II. BACKGROUND

Both parties agree the following summary from the Presentence Investigation Report ("PSR") accurately sets out the factual background of this case, as developed by the evidence adduced by the government at trial:

---

[1]The jury also convicted Young of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).  At the government's request, the district court dismissed that count.

On the night of September 25, 2008, and into the early morning hours of September 26, Mohamed Bennani was on duty as a security guard at Club Vinyl, a nightclub in Denver, Colorado. Club Vinyl is located near the intersection of 11th [Avenue] and Broadway, across the street from an Arby's restaurant. Bennani was stationed outside of the main door, which looks out towards the Arby's parking lot. As part of his duties, Bennani guards not only the nightclub, but also the parking lot where many of the club's customers and employees park their automobiles.

At approximately 1:45 a.m. on September 26, Bennani was looking towards the Arby's parking lot when he saw a group of people gathered near the bus stop in front of the restaurant. The crowd suddenly scattered and began to run. As the crowd dispersed, Bennani saw that they were running away from the defendant, David Lee Young. Young was pointing a silver, semiautomatic handgun towards the people, or a person, in the dispersing crowd. Young tucked the handgun into his waistband and started to walk away.

Bennani radioed his security partner, Howard Ladson, and informed him of the situation across the street from the club. Ladson was stationed on Broadway, slightly north of Bennani. Ladson looked towards the Arby's and saw the dispersing crowd. He described the scene as the "parting of the Red Sea," or words to that effect. The crowd appeared to be running away from the defendant, who was holding an object in his hand.

Bennani gave chase after Young, while Ladson crossed the street and went around behind Arby's to cut off the defendant's avenue of escape. Bennani never lost sight of the defendant. He pursued Young into the parking lot immediately south of the Arby's restaurant. Young ran behind a car and bent down. When Young bent down, Bennani could no longer see his hands. Bennani drew his sidearm and ordered Young to walk out from behind the vehicle.

Young attempted to flee, but his escape was cut short when he was cut off by Ladson. The security guards handcuffed Young. Daryl Honor, the security guards' supervisor, arrived as Young was being taken into custody. After Young had been subdued, Bennani went back to the automobile behind which Young had ducked moments earlier. Underneath the car, in the exact area where Young

had bent down, Bennani found a silver-colored, semiautomatic handgun. Its magazine was inserted. Bennani and Honor secured the weapon and flagged down a passing police car. The handgun and the defendant were turned over to Denver police officers.

The handgun was a Lorcin, 9 mm, semiautomatic firearm. It was loaded with 10 rounds of 9 mm ammunition. The firearm was operational and functioned as designed, in that it could expel a projectile by the action of an explosive. The firearm was manufactured in California. Therefore, it traveled in interstate commerce before coming into the defendant's possession. . . .

Prior to his possession of the firearm and ammunition on September 26, 2008, Young had been previously convicted of a felony offense punishable by more that one year imprisonment. On July 26, 2007, Young was convicted of felony possession of a controlled substance, in District Court, County of Denver, State of Colorado case number 2007CR003743. He was on state probation at the time he illegally possessed the firearm . . . .

### III. CHALLENGE TO CONVICTION

Prior to trial, the government disclosed its intent to introduce into evidence a recorded telephone conversation Young had with his sister on December 25, 2008. At the time of the conversation, Young was housed at the Federal Detention Center in Englewood, Colorado, awaiting trial. During the conversation, Young discussed a recently arrested acquaintance. After indicating the acquaintance would be going to jail, Young stated the acquaintance should have "blasted" the police officers that were trying to arrest him. Young then turned to the first-person, stating "I mean, that's what I was thinking. I should've blasted them motherf**ing security, homey. Straight up. . . . I should've blasted they ass." The government asserted these statements related to the incident

-4-

giving rise to Young's arrest and constituted an admission. *See* Fed. R. Evid. 801(d)(2) (providing that an admission of a party-opponent is not hearsay).

Young filed a motion in limine, as well as a supplement thereto, asking the district court to exclude the recorded conversation as irrelevant under Federal Rules of Evidence 401 and 402, and unduly prejudicial under Federal Rule of Evidence 403. In the alternative, should the district court conclude the conversation was admissible, Young asked the district court to allow him to, inter alia, introduce other portions of the December 25th conversation. At a hearing on Young's motion, the district court began by noting it had listened to, and reviewed a transcript of, the conversation. The district court ruled that the portion of the conversation designated by the government was admissible and, in the interest of fairness, the entire recording of the conversation could be played for the jury.

Consistent with its pre-trial statement of intent, the government introduced into evidence at trial a portion of the December 25th conversation. During the defense's case, Young testified the conversation did not relate to the events on the night of his arrest. He explained, instead, that the conversation related to a verbal altercation he previously had with security officers at the apartment complex where he lived with his mother and sister. Thereafter, the entire recording of the December 25th phone conversation was played to the jury.

Young asserts the district court erred in admitting into evidence the recorded conversation. According to Young, he was "unfairly prejudiced" because the conversation was "irrelevant to the offense as charged" and its admission "misle[d] the jury in believing that [it] . . . was related to [his] arrest." Appellant's Brief at 15. Thus, Young argues both that the evidence was irrelevant and more prejudicial than probative. *See* Fed. R. Evid. 401, 402, 403. Furthermore, for the first time on appeal, Young argues the admission of the recorded conversation is inconsistent with Federal Rule of Evidence 404(b) because it is evidence of other crimes, wrongs, or acts offered to demonstrate his bad character and action in conformity therewith. A review of the record demonstrates Young's arguments are without merit and the district court did not err in admitting Young's December 25th conversation with his sister.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Absent some contrary rule, "[a]ll relevant evidence is admissible." Fed. R. Evid. 402.

> The determination of whether the evidence is relevant is a matter within the sound discretion of the trial court, and we will not disturb that decision on appeal absent a showing of a clear abuse of discretion. The admission of evidence may constitute an abuse of discretion only if based on an erroneous conclusion of law, a clearly erroneous finding of fact or a manifest error in judgment.

*Owner-Operator Indep. Drivers Ass'n v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1193 (10th Cir. 2008) (quotations and citation omitted).

All of Young's arguments about the admissibility of the December 25th conversation revolve around his assertion, made both at the hearing on his motion in limine and at trial, that the conversation related not to the events surrounding his arrest, but instead to an incident involving security guards at his apartment complex. Young's mere assertion that the December 25th conversation referred to events unrelated to the night of his arrest, however, is an insufficient basis to exclude the conversation. "The bar for admission under Rule 401 is very low. This is because the degree of materiality and probativity necessary for evidence to be relevant is minimal and must only provide a fact-finder with a basis for making some inference, or chain of inferences." *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) (citation and quotations omitted).

The December 25th conversation easily satisfies this standard. The sole issue at trial was whether Young possessed a firearm on the night of his arrest. In the recorded conversation, Young indicates to his sister that a joint acquaintance should have "blasted" the officers trying to arrest him. He then turns immediately to the first-person and declares he should have "blasted" "security." A reasonable fact-finder could certainly infer from these statements that Young regretted allowing himself to be arrested by the security guards outside Club Vinyl and wished instead that he had shot them and made his escape. This inference makes

it far more likely Young possessed the gun found underneath the car where Young was observed crouching down just prior to his arrest. This evidence easily satisfies the low threshold for admissibility set out in Rule 401.[2]

As the text of Rule 401 makes clear, the December 25th conversation need not directly resolve the question of whether Young possessed a gun on the night of his arrest. Instead, it is enough that the conversation provide the jury "with a basis for making some inference, or chain of inferences." *Id.* (quotation omitted). As noted above, the jury could reasonably draw an inference from the recorded conversation that Young possessed the weapon found near the spot of his arrest.

Nor is the evidence relating to the December 25 conversation unduly prejudicial. *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."). Other than his assertion the conversation did not relate to the events on the night of his arrest, the sole basis for Young's assertion the conversation should have been excluded under Rule 403 is that the jury might not have appreciated his frequent use of

---

[2]For this same reason, even assuming it were preserved, Young's assertion that the admission of the recorded conversation violated Rule 404(b) is without merit. This assertion is entirely dependent on Young's claim that because the conversation referred to matters unrelated to the events on the night of his arrest it amounts to evidence of other wrongs in violation of Rule 404(b). Because the government never sought to admit the evidence under 404(b) and because the jury could reasonably conclude the conversation related to the events on the night of Young's arrest, Rule 404(b) is simply not implicated in this case.

expletives during the conversation.  Contrary to Young's assertion, the evidence relating to the recorded conversation did not suggest the jury "render its findings on an improper basis, commonly . . . an emotional one," or involve "circumstantial evidence [which] would tend to sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case."  *Jordan*, 485 F.3d at 1218 (quotations omitted).  Instead, the evidence went to the very heart of the sole issue before the jury for resolution: whether Young possessed a gun on the night of his arrest.  The district court quite reasonably concluded the highly probative value of this evidence easily outweighed any slight risk of unfair prejudice flowing from Young's extensive use of expletives during the recorded conversation.

The district court was well within the bounds of its broad discretion in concluding the December 25th conversation was relevant and that its admission was not unduly prejudicial.  Accordingly, this court affirms the district court's judgment of conviction.

## IV.  SENTENCING ISSUES

After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), this court reviews sentences for reasonableness.  *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009).  "Reasonableness review is a two-step process comprising a procedural and a substantive component."  *Id.* (quotation omitted).  "Review for procedural reasonableness focuses on whether

-9-

the district court committed any error in calculating or explaining the sentence." *Id.* "Review for substantive reasonableness focuses on whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* (quotation omitted).

A. *Procedural Reasonableness*

Young asserts the district court erred in increasing his offense level two levels for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, and an additional four levels for possessing the firearm in connection with felony menacing, pursuant to U.S.S.C. § 2K2.1. A challenge to the application of a sentencing enhancement tests the "procedural reasonableness" of a sentence, "which requires, among other things, a properly calculated Guidelines range." *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008) (quotation omitted). Likewise, "[s]electing a sentence based on clearly erroneous facts is a procedural error." *Id.* (quotation omitted). Accordingly, this court reviews "a district court's legal interpretation of the Guidelines de novo and its factual findings for clear error." *Id.* (quotation omitted). In so doing, this court is "mindful of [its] obligation to give due deference to the district [court's] determinations of the credibility of witnesses." *United States v. Keeling*, 235 F.3d 533, 535 (10th Cir. 2000) (quotation omitted).

*1. U.S.S.G. § 3C1.1*

In arriving at Young's offense level, the district court employed the two-level enhancement set out in U.S.S.G. § 3C1.1, concluding Young committed perjury[3] when he falsely testified at trial that (1) he did not possess the firearm he was charged with possessing and (2) he did not wave that firearm at a group of people in the Arby's parking lot, causing them to disperse. On appeal, Young asserts the district court's findings are insufficiently particular to support the application of § 3C1.1. He further argues the district court erred in applying § 3C1.1's obstruction-of-justice enhancement because the enhancement violates his constitutional right to testify on his own behalf at trial. Both contentions lack merit.

This court first takes up Young's assertion § 3C1.1 is unconstitutional because it interferes with his right to testify. This contention is contrary to binding Supreme Court precedent. *United States v. Dunnigan*, 507 U.S. 87, 96-98 (1993). In *Dunnigan*, the Court made clear "a defendant's right to testify does not include a right to commit perjury." *Id.* at 96. "Nor can [a defendant] contend § 3C1.1 is unconstitutional on the simple basis that it distorts [his] decision

---

[3]U.S.S.G. § 3C1.1 provides for a two-level increase in a defendant's offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." "Committing, suborning, or attempting to suborn perjury" is sufficient to trigger the obstruction of justice enhancement. U.S.S.G. § 3C1.1 cmt. n.4(b).

whether to testify or remain silent." *Id.* This is so, according to the Court, because its "authorities do not impose a categorical ban on every governmental action affecting the strategic decisions of an accused, including decisions whether or not to exercise constitutional rights." *Id.* In light of *Dunnigan*, Young's constitutional challenge to § 3C1.1 necessarily fails.

Nor can Young legitimately claim the district court failed to make the necessary findings to support the conclusion he committed perjury when he testified at trial. Perjury occurs when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* at 94. The mere fact a defendant testifies he is innocent and is later found guilty does not automatically warrant a finding of perjury. *Id.* at 95. Instead, a defendant who testifies under oath commits perjury warranting a § 3C1.1 enhancement only if: (1) the defendant made a false statement under oath; (2) concerning a material matter; (3) with a willful intent to provide false testimony. *Id.* at 94. Thus, "if a defendant objects to a sentence enhancement resulting from [his] trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice" under the *Dunnigan* definition. *Id.* at 95.

At the sentencing hearing, the district court made findings "encompass[ing] all of the factual predicates for a finding of perjury." *Id.*

You committed perjury. You have a right to testify, and you did. But you do not have a right to testify falsely. And during your testimony, you lied on several occasions. You were a felon charged with possession of a firearm, and you repeatedly testified that you did not possess the firearm you were charged with possessing, and that constitutes a material matter in the trial and you did so with the willful intent to provide false testimony. You don't have a right to give false testimony. You have a right to testify truthfully.

You denied under oath that you waved a firearm at a group of people, causing them to disperse. And such conduct constitutes felony menacing under Colorado law and is an enhancement of your criminal conduct under the Sentencing Guidelines. I find this testimony was false concerning a material matter. And finally in this regard, I find that you made this statement with the willful intent to provide false testimony. The evidence at trial was overwhelming that you were a felon who possessed a firearm and that you used it to menace a crowd of people on the date charged in the indictment.

These findings easily satisfy the standards set out by the Supreme Court in *Dunnigan*. *Id.* at 95-96. Furthermore, the district court's factual findings that Young testified falsely and did so willfully are amply supported by the record. *See United States v. Hankins*, 127 F.3d 932, 934 (10th Cir. 1997) ("[W]e review the sentencing court's factual determinations concerning the obstruction of justice enhancement for clear error only. We give due deference to the district court's application of the Guidelines to the facts and its ability to judge the credibility of the witnesses upon whose testimony it relied." (citations omitted)). Accordingly, the district court did not err in increasing Young's offense level two levels pursuant to § 3C1.1.

-13-

*2. U.S.S.G. § 2K2.1*

The district court increased Young's offense level four levels because his possession of the weapon underlying his conviction was in connection with the Colorado state felony offense of menacing. U.S.S.G. § 2K2.1(b)(6) (prescribing a four-level increase if the defendant used or possessed any firearm in connection with another felony offense); *id.* § 2K2.1 cmt. n.14(c) ("'Another felony offense' . . . means any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained."); Colo. Rev. Stat. § 18-3-206(1)(a) (providing that a person commits felony menacing if, by use of a deadly weapon, "he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury"). Relying on the testimony of the two security guards from Club Vinyl, the district court concluded Young had waved a handgun about in the Arby's parking lot, causing the assembled crowd to rapidly disperse. This factual finding, according to the district court, was all that was necessary to conclude Young's possession of the handgun was in connection with the commission of felony menacing.

On appeal, Young raises several objections to the district court's use of § 2K2.1 to calculate his offense level. All of these objections, however, revolve around the following common theme: because the government did not identify a particular victim (i.e., a member of the crowd that dispersed when he waved the

-14-

gun about in the Arby's parking lot) and present that victim to testify at the sentencing hearing, it failed to satisfy the requirement of the Colorado felony menacing statute that another person be placed in fear of bodily injury. The problem with Young's argument is this court has held that to prove felony menacing under Colorado law, a prosecutor need not prove "actual subjective fear on the part of the victim." *United States v. Cook*, 550 F.3d at 1297 n.5 (quotation omitted); *see also United States v. Blackwell*, 323 F.3d 1256, 1259 (10th Cir. 2003) ("[U]nder Colorado law, felony menacing is a general intent crime and it is enough that the defendant's conduct was sufficient to place someone in fear of imminent serious bodily injury.").[4] In neither *Cook* nor *Blackwell* did the record contain any indication from a victim of the felony menacing crimes that they had actually suffered fear as a result of having a weapon pointed at them. *Cook*, 550 F.3d at 1295-96 (concluding affidavits from two law enforcement officers simply

---

[4]The Colorado Supreme Court has described the crime of menacing as follows:

> Menacing, whether a misdemeanor or a felony, is a general intent crime. To establish that a defendant has committed the crime of menacing, it is not necessary to prove actual subjective fear on the part of the victim. Rather, it is only necessary that the defendant be aware that his conduct is practically certain to cause fear. Moreover, in defining felony menacing, the phrase "use of a deadly weapon" is broad enough to include the act of holding a weapon in the presence of another in a manner that causes the other person to fear for his safety, even if the weapon is not pointed at the other person.

*People v. Dist. Court of Colorado's Seventeenth Judicial Dist.*, 926 P.2d 567, 571 (Colo. 1996) (citations and footnote omitted).

-15-

recounting that the defendant had pointed a loaded shotgun at the victim were sufficient to support the district court's application of § 2K2.1(b)(6)); *Blackwell*, 323 F.3d at 1259 (affirming application of prior version of § 2K2.1(b)(6) based on simple testimony red beam from laser-equipped weapon passed over the bodies of several police officers). In light of this court's binding precedent, Young's arguments that he could not be subject to the enhancement set out in § 2K2.1(b)(6) without the testimony of an actual victim are without merit. Consequently, the district court did not err in increasing Young's offense level four levels pursuant to § 2K2.1(b)(6).

## B. Substantive Reasonableness

This court reviews the substantive reasonableness of a sentence under an abuse-of-discretion standard. *United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008). A sentence is substantively unreasonable only if the district court "exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (quotations omitted). That is, "[a] district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008) (quotation omitted).

> [G]iven the district court's institutional advantage over [this court's] ability to determine whether the facts of an individual case justify a variance pursuant to § 3553(a) (given that the sentencing judge, for

example, sees and hears the evidence, makes credibility determinations, and actually crafts Guidelines sentences day after day), we generally defer to its decision to grant, or not grant, a variance based upon its balancing of the § 3553(a) factors.

*Id.* Where, as here, the sentence imposed by the district court is within the properly calculated guideline range, there is a presumption of reasonableness. *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). This presumption can be rebutted if the defendant shows the sentence imposed is unreasonable in light of the factors set forth at 18 U.S.C. § 3553(a). *Id.*

As he did before the district court, Young argues that in light of the following factors his within-guidelines sentence is too harsh: (1) his young age at the time of the commission of the crime; (2) his traumatic childhood, which included an almost complete lack of parental guidance and being shot as a teenager; and (3) an argument his criminal history category V overstated the seriousness of his criminal history. The district court specifically noted the "tragic" nature of Young's childhood and stated it had "lost considerable sleep over the matter." It concluded, however, that the mitigating value of Young's personal circumstances were outweighed by the following factors: (1) although given multiple chances to reform after prior criminal conduct, Young had continued to violate the law; (2) Young's criminal conduct was increasingly violent, as demonstrated by his statement to his sister that he should have shot the security guards that arrested him outside Club Vinyl; and (3) Young's lack of

vocational and coping skills made it unlikely he would reform if quickly returned to the same environment. *See* 18 U.S.C. § 3553(a)(2) (providing that in arriving at a sentence, the district court must consider the need to "protect the public" and "provide the defendant with needed education or vocational training"). Accordingly, the district court imposed a sentence of seventy-six months' imprisonment, a sentence within the range set out in the advisory Sentencing Guidelines.

The district court's conclusion that the need to protect the public and provide Young with needed vocational and coping skills outweighed Young's personal characteristics is not arbitrary, capricious, or manifestly unreasonable. *Haley*, 529 F.3d at 1311. It is, instead, an eminently reasonable balancing of the factors set out in § 3553(a). *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008) (holding that this court "may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo," but must instead "give due deference to the district court's decision that the § 3553(a) factors, on a whole," justify the sentence imposed (quotation omitted)). Because Young has not overcome the presumption of reasonableness that attaches to a within-Guidelines

sentence, we affirm the substantive reasonableness of the sentence imposed by the

district court.[5]

_____

[5]Although Young does make a true substantive reasonableness challenge to his sentence in his brief on appeal, the majority of Young's arguments are actually, although labeled otherwise, challenges to the procedural reasonableness of his sentence. That is, in that section of his brief challenging the substantive reasonableness of his sentence, Young asserts the district court failed to adequately consider the factors set out in § 3553(a) and to explain how those factors justified the sentence ultimately imposed. As the Supreme Court has made clear, however, an argument the district court failed "to consider the § 3553(a) factors" or "to adequately explain the chosen sentence" are challenges to the procedural reasonableness of the sentence. *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Because Young did not raise these arguments before the district court, the issues are forfeited. *United States v. Romero*, 491 F.3d 1173, 1177-78 (10th Cir. 2007). Forfeited challenges to the procedural reasonableness of a sentence are reviewed only for plain error. *Id.* Because Young does not advance an argument that the forfeited "error" is plain, this court need not consider the issue. Nevertheless, this court's longstanding precedents make it absolutely clear the district court here did not commit error of any kind in arriving at Young's sentence. Pursuant to § 3553(a), a sentencing court must explain the reasons for its imposition of a particular sentence. A district court satisfies this obligation in a case involving a within-Guidelines sentence by entertaining a defendant's arguments, indicating on the record it considered the § 3553(a) factors, and "provid[ing] only a general statement of the reasons for its imposition of the . . . sentence." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2006) (quotation omitted). The district court need not explicitly reference each of the § 3553(a) factors or respond to "every argument for leniency that it rejects in arriving at a reasonable sentence." *United States v. Jarrillo-Luna*, 478 F.3d 1226, 1229 (10th Cir. 2007). The district court is not required to engage in a "ritualistic incantation" or recite any "magic words" to demonstrate it has fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider. *United States v. Lopez-Flores*, 444 F.3d 1218, 1222 (10th Cir. 2006). "Rather, it is enough if the district court considers § 3553(a) en masse and states its reasons for imposing a given sentence." *United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004). Here, the district court considered the sentencing factors set forth in § 3553(a), including Young's personal characteristics and history, and explained why those factors were simply not sufficient to support a

(continued...)

# V. CONCLUSION

For those reasons set out above, the judgment of conviction and sentence imposed by the district court are hereby **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

---

[5](...continued)
deviation from the advisory Guidelines range.  This is all that was required of the district court under this court's longstanding precedents.